Whaley, Chief Justice,
delivered the opinion of the court i
The sole question in these cases is the liability of the United States for extra compensation for services rendered at night, on Sundays or holidays by customs inspectors at the port of Detroit, Michigan. No claim is made for extra pay for any work other than the regular tours of service of eight hours during the twenty-four hours of any day. The parties have stipulated that the five cases in suit [Nos. 43671,43672, 43673, 43674 and 43675] shall serve as test cases for the determination of twenty-two other suits by customs inspectors at the port of Detroit to recover extra compensation. It has been agreed that the amounts payable, should the Court find for the plaintiffs, shall be stipulated or ascertained by proof.
Plaintiffs’ claims are based on section 5 of the act of February 13, 1911, 36 Stat. 899, 901, as amended by the act of February 7,1920, 41 Stat. 402, and sections 450, 451, 452 and 401 of the Tariff Act of 1930, 46 Stat. 590, 715.
The solution of the question involves an interpretation of' the section of the Act of 1911, as amended, which reads as. follows:
Seo. 5. That the Secretary of the Treasmy shall fix a. reasonable rate of extra compensation for overtime services of inspectors, storekeepers, weighers, and other cus *454 toms officers and employees who may be required to remain on duty between the hours of five o’clock postmeridian and eight o’clock antemeridian, or on Sundays or holidays, to perform services in connection with the lading or unlading of cargo, or the lading of cargo or merchandise for transportation in bond or for exportation in bond or for exportation with benefit of drawback, or in connection with the receiving or delivery of cargo on or from the wharf, or in connection with the unlading, receiving, or examination of passengers’ baggage, such rates to be fixed on the basis of one-half day’s additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o’clock postmeridian (but not to exceed two and one-half days’ pay for the full period from five o’clock postmeridian to eight o’clock antemeridian), and two additional days’ pay for Sunday or holiday duty. The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance whenever such special license or permit for immediate lading or unlading or for lading or unlading at night or on Sundays or holidays shall be granted to the collector of customs, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by ■the Secretary of the Treasury: Provided, That such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual lading, unlading, receiving, delivery, •or examination takes place or not. Customs officers acting as boarding officers and any customs officer who may be designated for that purpose by the collector of customs are hereby authorized to administer the oath or affirmation herein provided for, and such boarding officers shall be allowed extra compensation for services in boarding vessels at night or on Sundays or holidays at the rates prescribed by the Secretary of the Treasury as herein ■provided, the said extra compensation to be paid by the master, owner, agent, or consignee of such vessel: Provided further, That in those ports where customary working hours are other than those hereinabove mentioned, the Collector of Customs is vested with authority to regulate the hours of customs employees so as to agree with prevailing working hours in said ports, but nothing contained in this proviso shall be construed in any manner to affect or alter the length of a working day for customs •employees on the overtime pay herein fixed. (U. S. C. A. 'Title 19; Section 267.)
*455 The plaintiffs performed services at night, or on Sundays or holidays, at the port of Detroit where goods, merchandise, passengers and baggage arrived from or entered Canada on, over and under the Detroit River by way of ferries, tunnels and a bridge.
Extra compensation is claimed for night services at all stations and for Sunday or holiday services at the ferries, tunnels and bridge.
At one of the tunnels extra compensation was paid for Sunday or holiday services. Plaintiffs performed at all the stations herein involved services at night, or on Sundays or holidays, in connection with the lading and unlading of cargo, or the lading of cargo or merchandise for transportation in bond or for exportation in bond or for exportation with benefit of drawback, or in connection with the receiving or delivery of cargo on or from the wharf, or in connection with the unlading, receiving, or examination of passengers’ baggage. Only eight-hour periods of the twenty-four hours of any day, including Sundays or holidays, were performed. There is no claim made for any excess of time over eight hours.
Before November 15, 1929, when the Ambassador Bridge was opened, customs officers and employees at the port of Detroit were paid at all stations extra compensation for Sunday or holiday services. After the opening of the Bridge the collector of customs stopped payment of extra compensation for Sunday or holiday services at the ferries and tunnels and substituted therefor the practice of giving compensatory time off at a later date. No extra compensation for Sunday or holiday duty was made at the Ambassador Bridge or the Detroit and Canada Tunnel but compensatory time off was granted.
Section 5 of the act of 1911, as amended by the act of 1920, is not ambiguous but plain and clear. It not only provides extra compensation for overtime services of customs officers and employees who are required to perform services after five o’clock P. M. and before eight o’clock A. M. (defined in the act as “night” service) or Sundays or holidays but it definitely states the basis of the compensation of those who *456 work between five o’clock postmeridian and eight o’clock antemeridian not to exceed two and one-half days’ full pay and for the services on Sundays or holidays not to exceed two additional days’ pay.
Plaintiffs were on a yearly salary of $2,100 and were on duty after five o’clock postmeridian and before eight o’clock antemeridian or on Sundays or holidays.
It is contended that overtime means only “extension of work hours above eight hours in twenty-four” but there is nothing in the act to this effect. On the contrary, the act plainly states that the services rendered after five o’clock in the afternoon and before eight o’clock in the morning or on Sundays or holidays shall be “overtime”.
In Ferguson v. Port Huron & Sarnia Ferry Co., 13 Fed. (2d) 489, 492, in considering the provisions of section 5, the court held:
* * * The term “overtime” appropriately expresses the meaning, and in my opinion was intended to express such meaning: “Beyond the regular, fixed working hours.” The word “remain”, in the clause referring to officers required to “remain on duty between the hours” mentioned, means, according to its proper interpretation, “remain on duty after reporting for such duty.” The section itself provides that “such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual” work contemplated “takes place or not”. _ As was pointed out by the Supreme Court in its opinion in International Railway Co. v. Davidson, 257 U. S. 506, 42 S. Ct. 179, 66 L. Ed. 341: “This * * * section defines what shall be deemed overtime.” The only definition thus employed was the reference to the period of time between the particular hours specified, without regard to the question whether the services rendered “at night” or “on Sundays or holidays” immediately and continuously followed services just completed for regular pay. Clearly, the object of the statute was to facilitate lading and unlading “at night” and on Sundays and holidays, irrespective of whether the officers working in connection therewith had previously worked during the regular hours of the immediately preceding regular working “day”.
It is contended by the defendant that the portion of the section which reads:
*457 * * * The said extra compensation shall be paid by the master, owner, agent or' consignee of such vessel or other conveyance whenever such special license or permit for immediate lading or unlading or for lading or un-lading at night or on Sundays or holidays shall be granted to the collector of customs, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by the Secretary of the Treasury * * *
imposes the liability on the carrier and that, unless work is performed under a special license granted by the collector, no extra compensation accrues and nothing can be paid.
Section 451 of the Tariff Act of 1930, 46 Stat. 715, requires that before a special license to unlade can be granted to the master, owner, or agent, a bond in the penal sum to be fixed by the collector be given “conditioned to indemnify the United States for any loss or liability” which might occur. Section 452 of the same act requires a special license to lade at night or on Sundays or holidays.
The bond required is to “indemnify” the United States for the extra compensation which has to be paid the customs officers and employees who perform duties for which the license is given and which required the services to be rendered at night or on Sundays or holidays.
These customs officers and employees were employed by and received their compensation from the collector acting for the United States. Under the act of March 3, 1917, c. 163 § 1, 39 Stat. 1106, they could not receive their pay for services from any private source. Customs officials especially are forbidden to receive such payment. Eevised Statutes, § 1790. Payment had to be made by the Government through the collector and the extra compensation to the inspectors had to come out of the funds of the Government and the Government was liable for the extra compensation. The failure by the Government to collect from the carrier would not relieve it of liability for the extra pay for services during the periods under the statute.
It is contended by the defendant that the proviso of this section gives the collector full authority to require customs officers and employees to work at night or on Sundays or *458 holidays without extra compensation. The proviso reads as follows:
Provided further ^ That in those ports where customary working hours are other than those hereinabove mentioned, the Collector of Customs is vested with authority to regulate the hours of customs employees so as to agree with prevailing working hours in said ports, but nothing contained in this proviso shall be construed in any manner to affect or alter the length of a working day for customs employees or the overtime pay herein fixed.
It will be seen that the latter part of the proviso prohibits alteration of the length of a working day of customs employees or overtime pay fixed in the statute. The plain intent of the proviso is to permit collectors of customs at ports where longshoremen and others are accustomed to begin work earlier or later than the hour fixed by the section, to adjust the customs employees’ working day to correspond with the customary daylight working period at a certain designated port. In other words, the collector could allow the inspectors to work from 1:00 A. M. to 4:00 P. M. instead of from 8:00 A. M. to 5:00 P. M. because at a particular port it was the custom of the longshoremen to work these particular hours. It specifically states that this arrangement to a custom of a port shall not affect or alter the length of a working day for customs employees or the overtime pay fixed therein.
We do not think it necessary to go into an extensive discussion of the contention of the defendant that Congress gave legislative approval to the system of compensation and working hours adopted by the collector of customs at the port of Detroit by the passage of the Appropriation and Tariff Acts of 1922 and 1930 and by the insertion at the end of section 451 of the Act of 1938, 52 Stat. 1082, of the following provision:
Nothing in this section shall be construed to impair the existing authority of the Treasury Department to assign Customs officers or employees to regular tours of duty at night or on Sundays or holidays when such assignments are in the public interest, * * *
There is no denial of the fact that the Treasury Department has the right to assign the customs officers and employees to regular hours of duty during any eight-hour *459 period of the twenty-four hours of a day. However, there is nothing under this provision which restricts or qualifies the right of the customs officers and employees to extra compensation as provided by law for services rendered at night, or on Sundays or holidays.
It is our conclusion that plaintiffs have the right to extra compensation as fixed by section 5 of the Act of 1911, as amended by the act of 1920, for services performed between the hours of five o’clock postmeridian and eight o’clock ante-meridian, or on Sundays or holidays, and the defendant is liable for such extra compensation.
Plaintiffs are entitled to recover in cases Nos. 43671, 43672, 43673,43674 and 43675. Entry of judgment will be suspended to await the filing of a stipulation by the parties or the taking of proof as to the amount of extra compensation due plaintiffs in accordance with this opinion. It is so ordered.
LittletoN, Judge; and Greek, Judge, concur.
Whitaker, Judge, took no part in the decision of this case.