Robert M. Drysdale v. Commissioner.
Drysdale v. Commissioner
Docket No. 43032.
United States Tax Court
T.C. Memo 1955-71; 1955 Tax Ct. Memo LEXIS 268; 14 T.C.M. (CCH) 227; T.C.M. (RIA) 55071; March 28, 1955
Melvin S. Huffaker, Esq., and Pell Hollingshead, Esq., for the petitioner. Charles Speed Gray, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioner's income tax for the taxable year 1947 in the amount of $50,520.16. *269 The issues presented are (1) whether for the taxable year involved certain legal fees received by petitioner subsequent to July 1, 1947, the effective date of the Michigan Community Property Act, are taxable to petitioner as separate income or as community income where all the services in connection with such income where all the services in connection with such fees were rendered prior to that date, and (2) whether petitioner is entitled to the benefit of section 107(a), Internal Revenue Code (1939), in computing income tax upon receipt of the legal fees during the taxable year. Petitioner concedes that the amount of $1,091.21 received by him in the taxable year 1947 is not subject to the provisions of section 107(a) of the Code. Findings of Fact The facts which are stipulated are found accordingly. Petitioner is an individual residing in Grosse Pointe Park, Michigan. His income tax return for the taxable year 1947 was filed with the collector of internal revenue for the district of Michigan, at Detroit. At all material times herein petitioner and wife were residents of the State of Michigan. Petitioner, an attorney, has been engaged in the practice of law since 1908. *270 In February 1937 a group of United States customs inspectors, stationed at the Port of Detroit, solicited petitioner to litigate potential claims against the United States for Sunday and holiday back pay. Petitioner agreed to accept their cases upon a contingent fee basis of 25 per cent of any recovery and $60 in costs from each customs inspector. In September 1937 petitioner filed separate suits in the United States Court of Claims for 27 customs inspectors. Five of these cases were selected and argued before that court as test cases. On January 6, 1941, a decision was entered for the plaintiffs in Howard C. Myers et al. v. United States, 92 Ct. Cl. 447. On October 17, 1941, this decision was vacated by the court and a rehearing ordered. On February 1, 1943, the plaintiffs again prevailed and judgments were entered accordingly. (99 Ct. Cl. 158.) On October 11, 1943, the Supreme Court of the United States granted certiorari, and on January 3, 1944, that Court affirmed in part and reversed in part the decision of the Court of Claims. (320 U.S. 561.) On January 5, 1944, judgments were entered in favor of the plaintiffs in each of the five test *271 cases and in the remaining customs cases which were filed in 1937. Following the decision of the Supreme Court, petitioner ultimately handled the cases of some 75 customs inspectors which he prosecuted to judgment in the Court of Claims. For such services petitioner received $51,617.33 and $6,365.35 in fees for 1945 and 1946, respectively. In the midsummer of 1937 petitioner was visited by one Renner, a United States immigrant inspector stationed at the Port of Detroit, with respect to the possibility of determining the liability, if any, of the United States to the immigrant inspectors for back pay for Sunday and holiday services under an immigration statute similar to that involved in the customs litigation. At that time petitioner advised Renner that he would not undertake the claims of the immigrant inspectors unless he could be assured of a substantial number of participants. Petitioner also stated that he would delay filing any such cases prior to obtaining a favorable judicial construction of the customs statute. Renner told petitioner he thought he could obtain some 100 immigrant inspectors to support the litigation. Following the decision of the Supreme Court in the *272 Myers case, supra, the immigrant inspectors stationed at the Port of Detroit became interested in the possibility of litigating their claims for back pay. In February 1945, after the first customs inspectors received payment of their judgments, petitioner prepared a formal contract in mimeograph form which he turned over to Renner so that the latter could obtain a substantial number of cases, as previously discussed. The contract provided in pertinent part as follows: "NOW THEREFORE, in consideration of the mutual promises herein contained, the immigration employee hereby retains Drysdale as his attorney to assist in the collection of said claim, and Drysdale hereby accepts said employment; and in consideration thereof IT IS MUTUALLY AGREED AS FOLLOWS: "1. Drysdale agrees to prosecute to final conclusion a test case in the United States Court of Claims, involving the liability of the United States for such extra compensation, and to carry said case through the United States Supreme Court if it becomes necessary, and providing, of course, that the said court grants a review thereof. "2. Drysdale further agrees to file suit immediately in the United States Court of Claims for the *273 immigration employee for the collection of his said claim, and to prosecute it to conclusion in accordance with the results of the test case heretofore mentioned, and if judgment is rendered for the immigration employee, to process such judgment through the Treasury Department of the United States for payment thereof; he, the immigration employee, to grant to Drysdale the proper power of attorney for that purpose. "3. The immigration employee agrees to pay to Drysdale and Drysdale agrees to accept as full compensation for his services, the sum of twenty-five percent (25%) of the amount recovered by the immigration employee, either by suit or settlement, for all such services heretofore performed by him, and all such services which may be performed by him during the pendancy [sic] of said litigation and until the liability of the United States therefor is finally determined." Each of the immigrant inspectors, whose cases resulted in fees to petitioner in 1947, signed a contract during 1945, 1946, and 1947, identical to that above with the exception of four instances in which the terms of the contract were nevertheless applied. In March 1945 petitioner commenced filing separate *274 suits in the Court of Claims on behalf of immigrant inspectors. Two test cases were argued before the court. These cases, Renner v. United States, Krupp v. United States, 106 Ct. Cl. 676, were decided for the plaintiffs in September 1946 and judgment rendered thereon. At that time 98 cases had been filed and were controlled by the test cases. Judgments were entered accordingly in these cases. Thereafter, petitioner prosecuted additional cases to judgment in the Court of Claims. In all, judgments were rendered for some 129 individual immigrant inspectors. All judgments were rendered prior to July 1, 1947. All payments upon the judgments were made to the immigrant inspectors after July 1, 1947. The Government checks in payment of these judgments were mailed to petitioner who thereafter forwarded them to his bank with appropriate instructions as to the amount to be withheld and deposited to petitioner's credit upon endorsement of the particular inspector payee. Petitioner's fees, aggregating $97,749.36 in amounts ranging from $34.70 to $1,554.86, were credited to his bank account subsequent to July 1, 1947. In January 1946 petitioner was advised by the Comptroller General *275 of the United States that claims for additional compensation could be filed with the General Accounting Office since the statute of limitations with respect to claims filed therein was governed by a 10-year period of limitations, whereas the statute of limitations for recoveries in the United States Court of Claims was limited to a period of six years. On January 18, 1946, petitioner issued a "Bulletin" to the immigrant inspectors which provided in pertinent part as follows: "For the further protection of the litigants who have performed Sunday and holiday services back of the period of six years prior to the filing of their suits, I have decided to file their claims in the General Accounting Office, where the Statute of Limitations is 10 years, instead of 6 years. The purpose of this move is to protect the claims of those inspectors for services performed back of the 6 year period, and within the period of 10 years from filing in the General Accounting Office. * * *
"For the benefit of those inspectors who have performed services back of the 6 year period, two copies of a Power of Attorney are enclosed herewith, - one to be executed and returned to me for filing in the *276 General Accounting Office. It is necessary that I have such a Power of Attorney in order to represent these inspectors in that office. It is important that this should be returned to me immediately. It should be notarized by a Notary Public with a seal, and bear the signatures of two witnesses." Petitioner eventually filed claims for some 97 inspectors for administrative relief in the General Accounting Office for the additional four years prior to the six-year period recognized in the Court of Claims. On July 8, 1949, petitioner wrote to one Leon Blythe, an immigrant inspector who filed his own claim directly with the General Accounting Office, as follows: "It has come to my attention that, notwithstanding your contract with me, you have filed a claim direct with General Accounting Office for payment for services performed prior to March 15, 1939, and that one or more certifications have been made in your favor for services performed during that period. I sincerely hope you do not have the idea that by adopting such a course you will save paying me the fees agreed upon. "The contract which your committee approved, and a copy of which you signed on February 26, 1945, was intended *277 to and does cover that point very clearly. In your contract you agreed to pay me 25% of the amount recovered 'either by suit or settlement for all such services heretofore performed by him * * *.' * * *
"I think you will find that it will be more satisfactory to you in the end to permit me to make this collection for you as per contract. It may save a lot of trouble and expense, because, certainly, I will hold you to the payment of my fees. "So far, I have received 100% cooperation from the inspectors who employed me. If you try to avoid the obligations of the contract, yours will be the first case. I sincerely hope that my apprehension is not well founded and that you will cooperate as per contract." During 1945, 1946, 1947, 1948, 1949, and 1950, petitioner received fees from both the customs inspectors and the immigrant inspectors on account of the General Accounting Office "certifications" as well as for judgments obtained in the Court of Claims in those years, as follows: Immigration cases
Court of
General
Customs
Claims
Accounting Office
cases
judgments
certifications
Other [1]
Total
1945
$51,617.33
$51,617.33
1946
6,365.35
6,365.35
1947
$97,749.36
97,749.36
1948
1,413.40
29,211.34
$ 1,362.02
31,986.76
1949
2,740.18
10,027.00
43,477.00
$15,468.06
71,712.24
1950
9,241.09
463.86
13,871.48
16,923.93
40,500.36
*278 In his income tax return for 1947 petitioner included the amount of $4,768.26 as gross income received from legal fees in connection with the prosecution of claims of the immigrant inspectors, first allocating one-half of the total fees to his wife as community property and prorating the total fees over the period 1937 to 1947, inclusive, under section 107(a). The respondent in determining his deficiency disallowed the proration and the allocation as community income and determined that the entire amount of $97,749.36 constituted taxable income to petitioner. Opinion LeMIRE, Judge: The first question presented is whether for the taxable year 1947 certain legal fees in the aggregate amount of $97,749.36, received by petitioner subsequent to July 1, 1947, the effective date of the Michigan Community Property Act, [1] are taxable to petitioner as separate income or as community income. In support of his position that the compensation in question constitutes community income, petitioner contends that since the employment contracts made petitioner's fees contingent upon *279 the "amount recovered by the immigration employee, either by suit or settlement," his right to compensation was conditioned upon actual payment to the inspectors of the judgments rendered in their favor. We do not agree. *280 It is the general rule in community property states that the status of property is determined as of the date of acquisition. Separate property continues to be separate property through all changes and transactions so long as it can be traced, and the rents, issues, and profits are likewise separate property. Here, the contracts for petitioner's services had been executed, the judgments rendered, all services entitling the petitioner to the compensation called for by the contracts had been performed, and Congress had appropriated the moneys for the payment of the claims involved; [2] hence, petitioner's rights were complete and vested and constituted his separate property prior to July 1, 1947, the effective date of the Michigan Community Property Act. Petitioner has not shown when the checks in payment of the judgments were received by him. In our view, the fact that the fees received were credited to petitioner's account subsequent to July 1, 1947, is of no significance in determining the legal status of the compensation received. We, therefore, hold that the amount of $97,749.36 received by petitioner during the taxable *281 year 1947 was separate income and sustain the respondent on this issue. The second question presented is whether petitioner is entitled to the benefit of section 107(a), Internal Revenue Code of 1939, [3] in computing income tax upon the receipt of the particular legal fees during 1947. Petitioner has the burden to establish that the amount received by him in the taxable year involved was at least 30 per cent of the total compensation for his services and, also, that his services covered a period of 36 months or more from the beginning of the services rendered to the completion thereof. Petitioner must clearly satisfy both requirements. Van Hook v. United States, 204 Fed. (2d) 25, certiorari denied, 346 U.S. 825; Sloane v. Commissioner, 188 Fed. (2d) 254; Lucilla De V. Whitman, 12 T.C. 324, 330, affd. 178 Fed. (2d) 913. *282 The petitioner's contention with respect to meeting the 80 per cent requirement is that the legal services performed under each contingent fee contract constituted a separate and distinct retainer and since payment of 100 per cent of each individual fee was received in the taxable year 1947 he has satisfied this aspect of the statute. We agree with this contention of petitioner and think, therefore, that he has met the 80 per cent requirement. We do not think petitioner has satisfied the second statutory requirement that the services must be performed over a period of more than 36 months, since it is clear from the record that the retainer contracts with the immigrant inspectors were executed during 1945, 1946, and 1947, and the fees were received in 1947. To overcome this perplexing situation the petitioner advances the argument that the retainer contracts were merely a ratification of an alleged oral agreement he had with Renner, an immigrant inspector, in 1937, who was then acting on behalf of other immigrant inspectors having potential claims for back pay for Sunday and holiday services. Petitioner's premise appears to be that since the rights of the inspectors were all predicated *283 upon the same statute, Renner's alleged retainer in 1937 initiated petitioner's services which would aid and benefit all inspectors having similar claims. Stated differently, the argument is that since the claims of the inspectors were identical the litigations was for the benefit of the group and was similar in character to a derivative suit on behalf of corporate stockholders. We think the comparison is inappropriate. The claim of each inspector was a distinct individual right. An inspector who did not file a suit was not entitled to any payment. The amount of recovery varied and was dependent upon proof peculiar to each claimant. Furthermore, we are not convinced that petitioner has established an oral retainer by Renner in 1937 since the record shows that Renner executed a written retainer in 1945. Assuming for purposes of argument that Renner did actually employ the petitioner in 1937, the evidence does not establish that he was authorized to obligate any other inspectors with the possible exception of Krupp. The respondent offered the testimony of nine other inspectors who were associates of Renner to the effect that they were not contacted with respect to filing a claim until *284 they executed their respective retainer agreements in 1945 and thereafter. In this posture of the record we think the ratification argument is without merit. In our opinion, the two theories advanced by the petitioner, as to the character of the litigation and the ratification of the so-called Renner agreement of 1937, are without substance and, therefore, fail to sustain the petitioner's burden of showing that the 36-month period required by the statute has been met. Furthermore, the respondent contends that if the services were performed over the period from 1937 to 1947, the record shows that all of the services rendered to the immigrant inspectors were not finally completed during 1947 because additional services were rendered thereafter under the original retainers in filing claims with the General Accounting Office. The compensation received in 1947, therefore, was less than 80 per cent of the total compensation received under the retainer contracts in question. We think our findings of fact support the correctness of this contention. See George J. Hoffman, Jr., 11 T.C. 1057. However, since we have adopted the petitioner's contention that each claim and each *285 retainer contract was separate and distinct, we find it unnecessary to elaborate further on the position taken by the respondent. We hold that the petitioner has failed to establish that he is entitled to the benefits of section 107(a) of the Internal Revenue Code of 1939. Accordingly, we sustain respondent's determination that the entire compensation of $97,749.36 received by the petitioner in 1947 is includible in gross income for that year. Decision will be entered for the respondent. Footnotes
1. The fees contained in the item designated "Other immigration cases" are not in question in this proceeding.↩
1. Act 317, Pub. Acts of 1947, 18 Mich. Stat. Ann. (1953 Supp.), §§ 26.216(1), 216(4), 216(17), repealed by Act 39, Pub. Acts of Mich. 1948, on May 10, 1948: Section 1. (a) All property of the husband, real and personal, owned by him before marriage or before the effective date of this act, whichever is later, and that afterwards acquired by him by gift, inheritance, devise, or bequest, or received by him as damages or compensation for personal injuries, and all property of every kind, character, or description derived originally from property so owned or acquired, shall be his separate property, subject however to the right of dower. * * *
Sec. 4. All property of every kind, character, or description acquired by either the husband or the wife, or both, after marriage, or on or after the effective date of this act, whichever is later, except that which is defined as the separate property of either or the separate property of both in sections 1, 2 and 3 of this act, shall be deemed the community property of the husband and wife, and each shall be vested with an undivided 1/2 interest therein. The respective interests of the husband and the wife in such community property shall be present, existing, and equal interests and shall arise as an incident of marriage. Sec. 17. This act shall not be construed to operate retroactively and any right established or accrued and any action taken prior to the effective date of this act shall be governed by the law in force at the time such right was established or accrued or such action was taken.↩
2. Act of Aug. 8, 1946, c. 870, 60 Stat. 910, 913.↩
3. SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY. (a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.↩